15-0494, people of the state of Illinois at the lead by Mark Oswald v. G. Gaines, accompanied by Amber Hopkins. Ms. Hopkins. Good morning, your honors, and may it please the court, counsel. My name is Amber Hopkins-Reed, and I'm with the Office of the State Appellate Defender, here on behalf of the defendant, Mr. Keith Gaines. Gaines was charged with felony and misdemeanor criminal damage to property, trespass to a residence, domestic battery, and aggravated assault, all stemming from a domestic dispute that occurred between himself and his mother and stepfather. During the pretrial proceedings, Mr. Gaines sought to enter a fully negotiated guilty plea to domestic battery and misdemeanor criminal damage to property. The remaining charges were dropped, and he was going to be sentenced to 24 months probation. The trial court then sua sponte, vacated the plea, and the case went to trial. This case now comes to the court on direct appeal from the defendant's bench trial. There are four issues that I raised in my opening brief, and today I will discuss the first two. Could I interrupt you for a second? I thought it was a jury trial. There was some discussion about voir dire and questions that maybe I'm confusing cases. I have a case next that's a jury trial. Okay. I believe this is a bench trial. All right. And it was in front of Judge Vermilla. So there are four issues in this case. I'll be discussing the first two. However, if you have any questions on the third or fourth issue, please feel free to ask. As to the first issue, this court should vacate Mr. Gaines' criminal trespass to a residence conviction because the state failed to prove beyond a reasonable doubt that Gaines remained within his parents' residence without authority. And second, this court should reverse Gaines' convictions and reinstate his fully negotiated guilty plea because the trial court improperly vacated his plea and then subjected him to trial on the same charges. To my first point, this court should reverse Gaines' criminal trespass conviction because the state failed to prove that he remained within his parents' residence without authority, an essential element of the crime. This issue should be reviewed de novo because the issue doesn't entail a credibility determination by this court. Looking at the facts as they are, the state failed to prove an essential element of the crime, that being that the defendant remained within his parents' house without authority. What testimony is there that he remained without authority? There's no testimony that he remained within his parents' house without authority. The only testimony – so looking at the Illinois Supreme Court – Then what evidence is there? The evidence that was presented at trial was that he had implicit authority to be within his parents' house because these were his parents and because all of his belongings were in the home, and that's not even contested by the state. The testimony at trial also showed that he had explicit authority to be within the home because both his mother and his stepfather testified that he was living in the home at the time of the disturbance. And also, he had an innocent intent to be within the home specifically because his mother testified that on the day of the disturbance, he and his mother were meeting there to go Christmas shopping for the family's pets. The state, in its brief, is alleging that the evidence showing that there was an authority was Mrs. Gaines' 911 call where she says that the defendant didn't live in the house. However, it only impeaches her later testimony at trial, and it doesn't show that the defendant entered with a criminal intent. So we have later testimony about remaining without authority? No, we have later testimony that the defendant didn't live there. It doesn't go to the heart of the issue whether he remained within the home in that specific instance without authority. So there's absolutely no testimony that talked about in this particular instance that he remained within the home without authority. That's why this issue should be reviewed de novo. Well, I'm trying to get at that because we try to shy away from de novo in factual cases, obviously. We have to defer to the finder of fact at the trial level. Correct, yes, that is normally the standard review. However, when the state doesn't present any evidence on that issue, it should be reviewed de novo. Well, so it appears to me that your answer to Judge Hogan's question a minute ago is none. Correct. Okay. Finally, the state seems to insinuate in this case that upon committing a crime within the residence, the defendant was immediately unauthorized to remain within the home. However, this is not the case. Illinois Supreme Court in Bush has held that when a defendant enters with an innocent intent, and when there's authorized entry, and then a criminal act is committed, it does not immediately revoke the purpose of the entry. It doesn't automatically turn from an authorized entry to an unauthorized entry. And that Supreme Court case should be applied here because just because the defendant may have committed criminal actions within the home doesn't automatically change his entry from authorized to unauthorized. For these reasons, the state… May have? Are you talking about may have? I thought you wanted to reinstitute his plea. Oh, that's the second issue. So he had. If it's reinstated, he's… If he's reinstated. Yes, he's… Admitting to the conduct in the home. Yes, right. Bridget, what are the elements of criminal trespass to a residence? Criminal trespass to a residence. A person commits criminal trespass to a residence when without authority he or she knowingly enters the residence of another and knows or has reason to know that one or more person is present, or he or she enters the residence of another and remains within the residence after he or she knows or has reason to know that another person is present. And that's from Section 5-19-4A2. Well, the reason I asked was that the trial judge said that his domestic battery charge merged with the criminal trespass. Correct. And I'm trying to figure that out because those would be two separate crimes. And domestic battery is not a lesser included offense or anything like that, which seems to indicate that the trial judge was thinking anyway that authority to remain by virtue of committing a domestic battery evaporated. Somehow those two crimes were tied together. As far as I can figure that out. I'm trying to figure out the reasoning for this comment that the domestic battery merged into the criminal trespass charge. What's your understanding of that? My understanding is that just because a separate crime may have been committed in the house, it doesn't automatically revoke his authority. So even if the domestic battery conviction could stand if the court finds that the state didn't prove beyond a reasonable doubt that the defendant remained in the house without reporting. If there are no more questions, I'll move to my second point. Your argument. Okay. Gaines asked the court to reverse his conviction and reinstate his fully negotiated guilty plea because jeopardy attached to the plea agreement and continuing jeopardy doesn't apply. On March 10, 2016, the defendant agreed to plead guilty to misdemeanor domestic battery and misdemeanor criminal damage to property. In exchange for his guilty plea, the remaining charges were to be dropped and the defendant was going to be sentenced to 24 months probation. During the hearing, the trial court heard the sentencing recommendation and heard the factual basis. There was a plea called plea. They accepted the plea agreement and there was an ask for allocation. All before the court's response, they vacated the plea. Based on these proceedings, double jeopardy attached to the plea agreement. By statute, double jeopardy attaches upon the acceptance… Jeopardy. Double jeopardy is when you're trying twice, right? So you're saying jeopardy attached. Correct. Yes. And jeopardy attaches upon acceptance of the plea agreement. So here the judge accepted the fully negotiated plea agreement, which entered a conviction for domestic battery and for criminal damage to property, entered the sentence of 24 months and the dismissal of charges. The state argues that because there was no final judgment in this case, that double jeopardy never attached. This assertion is incorrect because 5-3-4 states that double jeopardy attaches upon acceptance. And it's worth noting that in no other instance is a final judgment required for double jeopardy to attach. You keep saying double jeopardy. It's jeopardy. It's jeopardy. I mean, double jeopardy is prohibited. Right. But you've got to find jeopardy. Jeopardy. So you're saying jeopardy attaches. Jeopardy attaches. Sorry. So therefore, he was tried twice, arguably. Right, yes. Because… Sorry. Yeah. Go ahead. Also, there is continuing… For example, jeopardy properly terminates if a defendant enters an alpert plea or asserts his innocence. However, here, the defendant was not attempting to enter an alpert plea or assert his innocence. The court told the defendant that he could make a statement and it would be taken into account in his sentencing, which was misleading in this case because since the plea and the sentence were already determined based on the fully negotiated plea agreement… Well, what did he accept? What did the trial judge accept? Well, because it was fully negotiated, the trial court accepted the plea agreement, the charges that he was going to plead guilty to, the sentence in the case, and the charges that would be dismissed. So the entire plea agreement. Because if the judge ultimately didn't agree with the sentence, the judge either had to not accept the guilty plea or allow the defendant to withdraw his plea at that point. So the trial judge did, in fact… So it would be misleading if the judge allowed the defendant to give an allocution and then tell the defendant that, oh, your statements are going to be taken into account because they put it. So the judge's misleading statements should not result in a penalty to the defendant, but the court's statements should give context to the defendant's allocution statements, asking for leniency, noting that the factual basis sounded worse than it was, and making comments that it was questionable whether the witnesses would appear for trial. However, this was not an expression of innocence or an expression to enter an alpert plea. But if the court was concerned that this was an expression of innocence, the court had a duty to clarify the defendant's intentions. As case law shows, these types of hasty decisions are not favored. Here, the trial court made a hasty decision that does not support a finding that the defendant tried to assert his innocence. Thus, jeopardy was improperly terminated, and the protections against double jeopardy apply. For these reasons, stated here and in Mr. Gaines's brief, this court should reverse its conviction for criminal trespass to a residence, or alternatively, this court should vacate Mr. Gaines's conviction and reinstate his form of negotiating guilty plea. What are those statements that apparently the trial judge interpreted would reasonably be interpreted as an expression of innocence? The defendant stated that – I don't have the direct quote in front of me, but he stated that he was stating that the claims were not as bad as they could have been, and he also challenged the state's authority to subpoena witnesses. He was making a statement that they might not apply. However, the judge interrupted him, so there's no real – there's no end of that sentence. Don't you think those statements are very important verbatim, because obviously the judge thought that they were reasonably to be construed as innocence, right? Oh, actually, I have it here on the third page. I apologize. I quote, I want to say I know it sounds bad in the statement that was given, but if it was to go to trial, no one would be coming to court, or if they would, they would say that, and then the court interrupted the defendant. Okay. So you're saying that there's no way that that statement could reasonably be interpreted as an expression of innocence. Correct. Two minutes, please. I have a – I'm sorry, were you finished, Bill? A question with regard to the sentencing. If I understand, the state's argument is that the jeopardy never attached because although the judge accepted the plea, he hadn't actually entered sentence. Could you just address that briefly? Correct. So jeopardy attached because the judge accepted the plea, and jeopardy properly terminated in this case because not only did the judge not have discretion to change his sentence because it was fully negotiated, the plea agreement here stated what the sentence was going to be, stated what charges were to be dismissed, and what charges the defendant was going to enter a guilty plea on. So because the judge didn't have the ability to ultimately change the sentence without allowing the defendant to withdraw his plea, and because the defendant never entered – never tried to assert his innocence, jeopardy properly terminated, and so the protections against that jeopardy apply in this case. So you're saying in the fully negotiated plea, an acceptance of the plea at that point is a de facto judgment entered by the court? Correct. Because that's what – it has to be your argument, right? Correct. And what case law is there to support that? Nothing. But this court is free to find that it's a de facto judgment because the defendant – the court at that point doesn't have the ability to change his sentence. The court only has the ability to either accept the plea agreement since it's fully negotiated or not accept it. But after acceptance, the court has to follow through with the plea agreement and the sentence that was imposed. Otherwise, the defendant is given the opportunity to withdraw. There's absolutely no case law out there that will articulate that. Well, Section 604D does state that what a plea – it goes through what a fully negotiated agreement is, but it doesn't say that it's a de facto judgment. Any other jurisdictions deal with this? Not that I can think of off the top of my head. Is this just so rare and unique? No, I just don't have a case to present for the court right now. Okay. And you're also arguing that the null pressed charges were automatically acquittal when the motion was made? Correct. Okay. If there's something else, I ask this court to either find that the state did not prove beyond a reasonable doubt, as Section 1, that the defendant entered without – or remained without authority, or alternatively reinstated guilty. Thank you. Thank you. Mr. Osler. Good morning. Defendant, please report. Defendant, first ask this court to reverse this conviction for criminal trespass to a residence, and that, of course, is a felony. There was a question about why the domestic battery charge may have emerged, and that was a misdemeanor. Potentially, that's why the judge would have done that. It was a misdemeanor charge. It's not speculation. I don't recall that the judge had deliberately done that. People charged the defendant with knowingly and without authority remaining in the home of his parents, Lee and Latanya Gaines, and that was located at 13658 South Jones Court, circled with a playing field. And when the defendant knew he had reason to know that one or more persons were in Gaines' residence on December 24, 2015, in a trial, the trial judge briefly examined Lee Gaines, who testified that the defendant had been released from prison in 2015, but he was not paroled to the Gaines' residence in the 9-1-1 report. Excuse me. Let me – listen. So, what evidence is there that he remained there without authority? That was in the 9-1-1 recording, the questioning that – Well, in the 9-1-1 recording, she just said he doesn't live here, right? That's correct, and also – And my son doesn't live at my house, but he visits from time to time, and adult children go to their parents' home, or your neighbor's over, or guests. The fact that they don't live there is not evidence that they're there without authority, is it? That in itself is not, but also in that same recording, she said she had told him to leave the residence, and he did not. He attacked her. So that's in the – So you do have a statement by the alleged victim that the ability for him to remain there was prohibited. Yes, in that recording. The recording itself would have that. Yes. So there is evidence. Yes, there is. Okay. And Debbie Stanko also testified in impeachment regarding the course of the investigation, and Latonya told him that the defendant was not supposed to be there. She told the defendant to leave, and stared at her in an intimidating manner such that she believed he was going to strike her. And then he left? Before he left. And then he left? And then he left after that time. He looked at her, and then he left? Well, he attacked her. Okay. It's another statement that she made, that he choked her. And there was a picture showing bruising and scratches, bruising to her neck and scratches to her face. She denied that she had any bruising and such, but that evidence was clear. That was – the pictures were taken on December 24th showing those bruises and scratches. Now, isn't it rather critical in these types of cases that remain without authority that we have a finding as to what does remaining mean? There has to be some finding. You say at some point the defendant was told to remove himself from the premises? Yes. That there's some evidence to allow that inference to be made? Yes. Okay. It's at that immediate point when they're told they cannot remain, they must leave. Any second or two seconds thereafter would constitute remaining if they don't immediately leave. Well, in this case, as I remember from facts, he did follow his mother into a different room and then attacked her at that point. After she had expressed, you're no longer to remain here. That's my memory as well. Very specific. Included in the 9-1-1 recording. Okay. And so we argue that the people proved the defendant guilty beyond reasonable doubt of criminal trespass against residents in the facts area, including in the recording and the impeachment evidence that the defendant dealt with. As far as the second issue, the defendant argued that the trial judge abused his discretion by sui sponte vacating the plea or alternatively that the judge violated the double jeopardy clause by trying to defend him on the same charges. We first argue that the defendant supported this issue because he did not object when the trial judge vacated the plea and he did not raise the issue in a post-trial motion. The defendant asked for plain error review, but as people noted, there was no error and the plain error review does not apply. The defendant also asserts the trial counsel was ineffective for acquiescing to the vacated plea and to the alleged double jeopardy violation. The trial judge properly vacated his acceptance of the defendant's submission of his guilt where the defendant made statements indicating he was not guilty and that he would not have been proven guilty of trial. It is unreasonable to believe that the trial judge would have sustained an objection to the vacated appeasement plea and therefore the defendant's counsel could not have been ineffective for failing to object to the vacated plea under these facts. So what is, you mentioned that the defendant is arguing an abuse of discretion by the trial judge. Is this an abuse of discretion review of this issue? It is an abuse of discretion review because whether to accept a guilty plea and whether to vacate a plea is an abuse of discretion. And whether to vacate a previously accepted guilty plea is an abuse of discretion? Both, yes. In this case we argue that though he accepted his admission of guilt to the charges, to the facts, he did not, there was no final guilty plea. The judge had stated to the defendant prior to the factual basis and such that he did not have to accept the sentencing recommendation. So the defendant was on notice already that this guilty plea as negotiated was not accepted by the trial judge. And that's why after saying, okay, I accept your admission of guilt based on these facts, the judge then held a sentencing hearing. He asked for, if he'd like to make a statement in an allocution and specifically stated to the defendant that he could use anything the defendant said in determining a sentence, whether to accept that sentence recommendation under the way I read the facts. He wasn't specific in saying that, you know, whatever you say here can be used to lengthen your sentence or shorten your sentence. What's a partially negotiated plea in your mind? Partially negotiated would be a sentencing cap, for instance. You don't have a specific sentence recommendation. In this case we had a cap, so to speak. They set up a sentence, a specific sentence, but when the judge told the defendant he's not going to accept this, he's not bound by this, then we have a clear statement that this may have been negotiated by the parties, but the judge is not bound by that negotiation. There was no 402 conference where the judge offered a sentence recommendation. There was no concurrence to the sentence whatsoever, and the defendant clearly stated that and told that before he actually entered his guilty plea. And so we then went into a sentencing hearing after that point, so this guilty plea was not complete yet because we had actually gone on to sentencing. We had no sentences imposed, and the judge clearly said I don't have to accept this sentence recommendation. At the outset of the presentation, he said that. Your Honor, the people standing are briefed for all the priority. Counsel may correct me in a moment here on rebuttal, but I believe the defendant's position is that because it was a fully negotiated plea, when the trial judge said I'll accept the plea, it was an all-or-nothing process. He was, in effect, agreeing to not only accept the plea but also agreeing to the sentence. Does counsel acknowledge there is no case law support that we do have? For instance, the Salem court, this court reviewed whether a guilty plea could be used to impeach the defendant's credibility where the plea did not result in a sentence, and the court concluded that the guilty plea did not constitute a conviction for purposes of impeachment, and that the trial court had occurred by allowing the jury to consider the guilty plea, which had never been, where there is no sentencing involved. The defendant mentions the Martell case in his second district case with a proposition that a judge had no discretion in the sentence. The defendant, to the charm of it, recommended a sentence, but the Martell court stated that even with a fully negotiated plea, the trial court's role in sentencing had dwindled but not only disappeared. So there is case law support that also that we had a variety of cases that we've signed in our briefings where a guilty plea becomes final upon sentencing. Since we didn't have sentencing here, that guilty plea was never finalized. A judgment of conviction must be comprised of what? You must have the finding of guilt, whether it's from a guilty plea or a jury's finding of guilt or the judge's finding of guilt, plus ultimately the conviction becomes final upon sentencing. A conviction judgment includes finding of guilt and imposition of sentence. Yes, Your Honor. Until that, both elements are present, you don't have a judgment of conviction. That's correct. And when does jeopardy attach? Jeopardy attaches for purposes of double jeopardy when the conviction is finalized. Which is a judgment. Yes. If there's a jury trial, when does jeopardy attach? Jeopardy attaches at the time of the finding of guilt. Doesn't it attach when the jury is sworn? That's when the jury is sworn and the trial, of course, is in progress. And so in a jury trial, jeopardy attaches prior to any judgment of even finding of guilt, let alone a judgment of guilt in a sentence. In that case, my memory is that that is correct. Jeopardy attaches at the time of trial. But in a guilty plea situation where the judge vacates the plea, then whatever jeopardy that has attached is then removed. So there is no bargain for later retrial on those same charges. So what does it mean when the trial court accepts the guilty plea? In this case, you didn't accept the entire plea, of course, but if you do accept the entire plea, then you have a conviction in judgment. But I think what I'm asking is when does jeopardy attach? And that would be at the time of the finding, of course, of the acceptance of the admission of guilt. But then once the judge later vacated that acceptance, then that jeopardy was removed. So you agree that jeopardy had attached? Yes. Yes, I can't deny that. I believe the case law is clear on that point. Upon acceptance? Upon acceptance of the admission of guilt in this case. But then because the defendant later made, in the course of, when the first statement of facts came out, he said, well, I disagree with the statement of facts, but I'm not going to fight. And so in that statement, he's basically saying that's not going to happen. That can be interpreted easily as a statement of innocence. And then he made those later statements. In the allocation, he was saying that it looks bad, but no one would fill up the trial, and if they did, they would say that, and that's when the judge interrupted. So the implication of that incomplete sentence was if they did show up for trial, they would support that he was guilty. We don't know exactly what he was going to say, of course, because he just interrupted. So since we don't know what he was going to say, how can we assume that he was going to, that that was an innocence claim? We can't assume that. That's correct. We're just saying the implication based on the prior statements and his statement that no one was going to show up for trial anyway, the implication is that he was intending to say that they would not support that he was guilty. Or that the state wouldn't have evidence to support the finding of guilt. That may have been the other direction he was going. In other words, you're saying if it goes to trial, you're not going to be able to prove it. That's the people's argument, yes. Okay. And an Alford plea is just saying I understand that's what the state's going to produce. And then the judge has to make sure that the evidence the state says they will proffer will support the elements of the charge. Correct. But there's, that's correct. But here the defendant is not denying guilt. In an Alford situation? No, in this situation he's not denying guilt. I believe that he actually did, especially when he first said that he denied the facts. He didn't know those facts were not correct. He said it doesn't sound as bad. I mean, it sounds worse than it was. He's not saying he didn't do something that was a violation of the law. He never said he didn't do it. You're correcting that statement, yes. So he didn't deny, he's not proclaiming innocence. He's proclaiming that he's not guilty under the facts that were outlined. I don't, it's not clear that he's proclaiming innocence to all five of the charges. I mean, we had at this point two charges under the guilty plea negotiation. Has he just converted this into an Alford plea? I'm sorry? Has he just converted this into an Alford plea? Possibly. I can't state that as a fact. But the ultimate point is that the judge believed he was saying that he wasn't guilty. And the judge on that basis vacated his guilty plea. An Alford plea is the state can prove that I did something wrong, but I'm innocent. Is that correct? I'm not invading guilt, yes. And you're saying that that's what this translates into? Well, the holder just put that forth, but I'm not saying that, no. Okay. Any other questions, Your Honor? Thank you. Ms. Hopkins and Rebella. So there was some evidence, huh? So the state's statement is conformed deputies, then goes testimony, which was purely used for impeachment purposes. So it cannot be used for its substantive purpose. Let me ask you a direct question. And that is, in the 9-1-1 tape, counsel just represented that the mother said she told him to leave and he didn't. So is that in the 9-1-1 tape? My recollection of the 9-1-1 tape is that she only states that the defendant does not live with her, which does not go to the actual heart of the issue, that he remains a general resident in this specific instance. Okay. So the direct answer to my question is no, you don't believe that that statement occurs in the 9-1-1 tape. Correct. We got the 9-1-1 tape. Perhaps I'll have to listen to it again. Correct. Also, I'd like to briefly touch on... So... Oh, also, the state talks about how the testimony in the 9-1-1 tape, but also the defendant, when he was... So there was an altercation in the house with his mother. He left, and there was an altercation with his father out on the lawn. But when the defendant was told to leave, he left. And when the police came up, they found him more than three houses away, down the block, walking away from his parents' house. So there's also not... The state hasn't proven up any evidence that he remained within the residence, because when he was told to leave, he left. And it's got to... When we're talking about the residence, we're talking about inside the house and not in the yard. Correct, yes. And finally, I'd like to touch on the fact that even if this court doesn't believe that Jeopardy! attached or that Jeopardy! terminated properly... See, here's the question I have about this. It's a timing. Everything is timing in life. He's in the house, with permission at that point, you can tell. And I'm getting a scenario where he's having an altercation with his mother. Correct. Okay. And so, when was he told to leave? And, or, was he attempting to commit domestic battery, and then he was told to leave? It kind of depends on when that occurred. Well, even if the defendant committed a domestic battery under the Illinois Supreme Court case of Bush, his authorized entry did not immediately turn into an unauthorized entry just because of the criminality that was committed within the residence. But that's a different question from whether he left when he was told. Correct, and when he was told to leave, he left. Well, do we, assuming, okay, he's told to leave, our point is, from this record, when was he told to leave? At what point in the timeline did somebody tell him to leave? Before he assaulted his mother or after? Based on my reading of the record, the defendant was told to leave as he had exited the house with Mr. Lee Gaines. So that's after. Correct. Okay. Then, oh, finally, I'd like to briefly touch on the fact that the state submitted a motion to add additional authority, asking this court to look at People v. Barra as the fourth issue. I just, because the fourth issue deals with monetary sentencing credit or per diem credit, I would ask this court not to take Barra into account because it doesn't have any clarity. Well, we ruled on this motion. Yes, it was allowed. One other question. The state argues that the standard of review for the trial judge's action in vacating the plea is abuse of discretion. Do you agree with that? I do. However, in order to properly withdraw a motion, there has to be a manifest injustice, and certain indicators of a manifest injustice are things like the defendant was asserting his innocence, or there's a misapprehension as to the law or facts, or there's some kind of fitness issue that is raised, and those types or those indicators that there's a manifest injustice are not present in this case. So the court didn't rely on a proper legal basis to unwind the plea agreement and the plea proceedings, and he also didn't go through proper plea procedures. So when the defendant, if he wanted to withdraw his plea, under Rule 604D, there should be, you know, a certificate filed, there's a motion filed, there's the appointment of counsel, and there's ultimately a hearing on the motion, and none of that was done in this case. Well, there's no indication here that the defendant, I mean, this is, what's the procedure for a judge, so to speak, changing his mind and vacating his acceptance of the plea? At a minimum, under these procedures that are enumerated, there should at least be a hearing on the motion and adversarial testing of the withdrawal, so each party has the opportunity to argue over the fact that the plea is being vacated, and that specifically was not done here in this case. So could it have been done? Could somebody have said, well, slow down, judge, let's talk about this. I object to that. There's no basis for doing what you're suggesting you're doing. And I think, judge, if you do that, I mean, this is what lawyers do in courtrooms. Sometimes the judge does something, and as you do that, that's going to be an error, and you're going to get a reverse. So let's think this through. We object to that. Correct. Is there any reason that couldn't have happened here? And that didn't happen here, and that goes into the ineffective assistance of counsel argument here, that counsel should have objected and didn't, and that was an error. And the prejudice that resulted is that the defendant wasn't able to enter a guilty plea where he would have only been subjected to 24 months probation, when, in fact, in this case, the defendant was sentenced to 60 months incarceration. One minute. Thank you. I have no further rebuttal, however, if the judge has any other questions. I just have a question. Did he convert this into an author plea? So an author plea would be that the defendant is in agreement that the state could present certain evidence, and although he's maintaining his innocence, the defendant here in this case didn't make any statements that he's maintaining his innocence. His statements here don't pin on his innocence at all. When looked at under the lens that the judge told the defendant that he could give a statement in allocution, they merely showed that the defendant was asking for leniency because the factual basis here wasn't as – what happened wasn't as bad as what the factual basis was. Okay. Okay. Allocution goes to prior to the imposition of sentencing. Not generally, but not here. Yeah, that's – yeah, it does. Okay. So it goes back to you saying it's fully negotiated. Correct. And so the acceptance of the plea is the acceptance of the sentence. Correct. If there's nothing else, that's all I have to rebuttal. Thank you. Thank you. Thank you both for your arguments here this morning. We'll take this matter under advise that this position will be issued, and right now we'll be in –